IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| BOWE VONBRETHORST, STEVE PATTERSON, individually and as representatives of all other employees similarly situated, RONALD LOUIS MCDANIEL, JR. and LILLIE JANE "JANIE" LEWIS individually and as representative of all other employees similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>WASHINGTON COUNTY, IDAHO, WEISER AMBULANCE DISTRICT, and DIANA L. THOMAS, in her official capacity as Chairman of the Board of County Commissioners of Washington County, Idaho,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CV06-0351-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

The Court has before it Plaintiffs' motion for summary judgment on issues of statutory liability (Docket No. 14).  Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.  For the reasons expressed below, the Court will deny the motion.

## STATEMENT OF FACTS

Plaintiffs are emergency medical technicians (EMTs) employed by or volunteering for the Washington County Ambulance Service.[1]  Defendants are those entities and persons in their official capacities that Plaintiff claims were in control of the Ambulance Service.

The emergency medical service crew must consist of at least one paramedic and one EMT.  Both of these individuals are necessary to properly provide the service.  There is a 24-hour coverage requirement for each day of the week, requiring some employees to maintain an "on-call" status while not located on the work premises.  Although Plaintiffs were compensated somewhat for their time spent on-call, they were not paid full-time wages.  On this basis, Plaintiffs assert claims of unpaid overtime wages under the Fair Labor Standards Act, and applicable laws.

## STANDARD OF REVIEW

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*

---

[1]   The Court in this opinion is not ruling on the issue of which plaintiffs are disqualified under the volunteer exemption, and will take up this question at a later date.  As such, the use of the word "worker" in this opinion does not refer to any particular Plaintiffs.

**Memorandum Decision and Order -2**

*v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  "A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The evidence must be viewed in the light most favorable to the non-moving party, *Anderson* at 255, and the Court must not make credibility findings.  *Id.*  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Id.* at 256-57.  The non-moving party must go beyond the pleadings and show "by [his or] her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary

**Memorandum Decision and Order -3**

judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Whether a particular set of facts constitutes compensable "work" under the Fair Labor Standards Act (FLSA) is a legal question for the court. *Berry v.County of Sonoma*, 30 F.3d 1174, 1180 (9th Cir. 1994), s*ee also Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000) (The determination of whether an employer qualifies for an exemption under the FLSA 29 CFR 553.215(a) is a question of law).  The jury, on the other-hand is charged with determining whether and to what extent employees are able to use on-call time for personal activities. *See Berry*, at 1180.  In other words, a jury must determine which activities where engaged in during the time in question and a court determines if those facts give rise to liability.  *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, (11th Cir. 1992).

In this case (as in most other FLSA cases) there is no dispute over which activities employees engaged in.  Consequently, these cases are often settled on a summary judgment motion where the only remaining questions are for the court.  Thus, it becomes the primary job of the court to find a way to balance these factors by comparative evaluation between the facts of the instant case with those of other cases. *See Berry,* at 1183, and *Brigham* at 937.

## ANALYSIS

The FLSA requires an employer to pay a minimum wage for each hour it "employ[s]" an employee, as well as an overtime premium for hours in excess of forty per week.  *See* 29 U.S.C. §§ 206, 207, 213.  "Employ" [means] "to suffer or permit to work." *Id*. § 203(g).

**Memorandum Decision and Order -4**

In the on-call context, the question often arises as to what constitutes "work." The Supreme Court has held that time spent waiting for work is compensable if the waiting time is spent "primarily for the benefit of the employer and his [or her] business." *Armour & Co. v. Wantock,* 323 U.S. 126, 132 (1944) (citation omitted). "Whether time is spent predominately for the employer's benefit [is] dependent upon all the circumstances of the case." *Id.* at 133; *accord Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944).  For example, facts may show that the employee was "engaged to wait," which is compensable, or they may show the employee "waited to be engaged," which is not compensable. *Skidmore,* 323 U.S. at 137.

Making this determination requires a balancing approach.  While, on the one hand, on-call time is not compensable simply because an on-call worker lacks the same flexibility they would if not on-call; on the other hand, where an on-call worker is unduly restricted from engaging in personal activities, that time is compensable.  *See Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 350-51 (9th Cir. 1992), cited with approval in *Brigham*, 357 F.3d at 936.

The Supreme Court has been reluctant to "lay down a legal formula" to determine whether waiting time is spent primarily for the benefit of the employer.  *Skidmore,* 323 U.S. at 136.  However, courts dealing with this question have focused on a two-prong inquiry: (1) the degree to which the employee is free to engage in personal activities; and (2) the agreements between the parties.  *Owens*, at 350.

## I.     Degree to Which Employee is Free to Engage in Personal Activities

Turning to the first prong, the focus is "on the employee and whether he [or she] is so restricted during on-call hours as to be effectively engaged to wait."  *Id.*; *See also*

**Memorandum Decision and Order -5**

*Armour,* 323 U.S. at 132-33; *Skidmore,* 323 U.S. at 136-39.  The Code of Federal Regulations clarifying the "waiting to be engaged" doctrine states idle time is only compensable when "the employee is unable to use the time effectively for his [or her] own purposes." 29 C.F.R. § 785.15; *accord Halferty v. Pulse Drug Co.,* 864 F.2d 1185, 1189 (5th Cir. 1989).

Courts have considered a number of factors in determining whether an employee plaintiff uses on-call time for personal purposes: (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time.  *Owens*, at 351.

In these cases no one factor is dispositive of whether the employee's time has been unduly restricted and each case will depend on its own facts.  *Skidmore,* 323 U.S. at 140.  Each case is different, and some factors may not apply in every situation.  Thus, the Court's job is to balance the relevant factors (those permitting personal pursuits against the factors restricting personal pursuits) "to determine whether the employee is so restricted that he [or she] is effectively engaged to wait."  *Brigham v. Eugene Water & Elec. Bd.*, 357 F3d 931, 936 (9th Cir. 2004), (*quoting Berry,* 30 F.3d at 1183; *quoting Owens,* 971 F.2d at 351).

**Memorandum Decision and Order -6**

**a)      On-Premise Living Requirement**

Beginning with the first factor, neither party disputes the lack of an on-premise living requirement in this case and this factor would seem to clearly weigh in favor of the Defendants.  Still, Plaintiffs stress the response time prevents them from being located very far from the premises.  This observation is more relevant to the second and fourth factors, dealing with geographical restrictions and unduly restrictive response time.  Thus, the first factor weighs in favor of Defendants.

**b)      Geographical Restrictions**

The second factor asks whether there are excessive geographical restrictions on the employee's movements.  Courts have measured these restrictions in two ways.  Some courts have determined geographical restrictions by the radio transmission radius.  *See Cross,* 938 F.2d 912, 916-17 (8th Cir. 1991).  Other courts have focused on the required response time.  *See Brigham* at 936-37 and *Owens* at 351.

In *Cross*, the employees were required to respond to radio dispatches with only a 50 mile transmission radius.  *Id.* at 916-17.  Because this transmission radius limited the ability to travel beyond 50 miles, the court found the workers were geographically limited.  *Id.*  A short response time has the same geographically restrictive effect as a transmission radius in that it prevents an employee from traveling outside of the response radius.

In one Ninth Circuit case, workers had to remain within earshot radius of their home phones and alarm systems because they were required to respond instantaneously to any alerts.  *Brigham,* 357 F3d 931, 936-37 (9th Cir. 2004).  Workers were obligated to reach the station sober, dressed, prepared, and as soon as possible because they were

**Memorandum Decision and Order -7**

responsible for the safety of others. *Id.* That court found the employees were subject to strict geographic constraints because of the immediate response alerts. *Id.* Although the other factors were close, the court in that case found the balance to weigh narrowly in favor of the employees. *Id.* at 937.

The Ninth Circuit has also determined geographical restrictions based on the required response time for the worker to return to the work premises. *Owens* at 351. In that case, the workers were not given a required response time and were only required to respond to 30% of their calls. *Id.* at 349, 353. As a result, those workers were able to travel extensively during their on-call time, many of them attending various out-of-town events. *Id.* at 353.

In reaching the *Owens* decision, the Ninth Circuit relied on a Fifth Circuit case where an on-call technician was required to respond within 20 minutes of a call. *Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671 at 672 (5th Cir. 1991) *en banc,* (*cited in Owen* at 351-52). That court found the worker could go virtually anywhere within the 20 minute response radius and was not overly restricted. *Id.* at 678.

In the present case, Plaintiffs were limited to a response radius of 5 minutes. According to the Defendants, this restriction geographically limited the workers to the city limits of Weiser. Such a restriction seems substantially more limiting than the 20 minute response radius, which the Ninth Circuit has referred to, and which was found to be overly restrictive. Still, a five minute radius is not as restrictive as those required to be within earshot of their homes. However, like those plaintiffs, the workers in this case are similarly responsible for the safety of others and required to arrive at the employer's station in a relatively short period of time, sober and in uniform, thus limiting their

**Memorandum Decision and Order -8**

ability to travel outside the 5 minute radius.  Finally, unlike the workers in *Owens*, who

were able to travel outside the city limits, Plaintiffs here were restricted to the parameters

of Weiser.  Thus, the factor of geographical restrictions would seem to tilt in favor of the

Plaintiffs in this case.

c)      **Response Time**

The fourth factor is disputed on two levels, 1) what constitutes a restrictive

response time and 2) which, of two response times should be analyzed.  Neither party

disputes that the on-call workers were required to vocally respond to a radio call within

seconds.  All workers state in their depositions or affidavits they were told they had to

respond to a call in five minutes.  It is undisputed that the workers generally arrived at

the station within 5 minutes.  However, both parties seemed to have been aware of

another policy, an "official" policy, setting a minimum response time of 20 minutes.

Plaintiff Patterson testified in his deposition that he was told by an Ontario, OR

attorney who was counsel for Treasure Valley Paramedics that if workers come in before

20 minutes, then they must be paid as full-time employees, but a 20 minute response time

does not require compensation.  Patterson testified that policy was followed for Treasure

Valley Paramedics, but not in Weiser.  In Weiser, Patterson claims he was trained by

Dave Lewis who told him he was expected to respond within 5 minutes.  In Patterson's

Second Affidavit (Docket No. 62), he attaches as Exhibit A, one page of a written policy

alleged to be the Ambulance Service General Policies manual that was allegedly adopted

by the County Commissioners prior to Patterson beginning work with the county and to

his knowledge was never rescinded.  The written policy states in part: "EMTs who are

scheduled for call must be within a five (5) minute drive from the hospital."

**Memorandum Decision and Order -9**

The Court had its staff attorney contact counsel to determine if there was any record of a written policy stating the response time was 20 minutes, counsel for the Defendants indicated there was no written policy regarding the 20 minutes. Patterson testified in his deposition that he made the County Commissioners aware of the 20 minute requirement pursuant to the FLSA, but the County Commissioners did not change the Weiser standard from 5 minutes to 20 minutes.

Defendants rely on Patterson's deposition testimony that he had a conversation with Kerry Nyce, Ray Hart, Jerry Sullivan, Heather Goff, and Bowe VonBrethorst that the response time standard was 20 minutes, and that Patterson talked with an investigator, Ted Pulver, in 2000, wherein he stated the response time was 20 minutes. Defendants acknowledge that Patterson personally believed there was a moral and/or ethical duty to respond within five minutes, but argue that an individual's moral duty is not the test under the FLSA.

Although they do not dispute Plaintiff's record of responding in 5 minutes, Defendants argue the 20 minute time was the official response time, and the shorter limit should not be factored against them. Plaintiffs respond they were obligated, both by the county and moral duty, to report to the station within 5 minutes of a call. This being the case, Plaintiffs urge the Court to use the 5 minute time regardless of what is contained in the official policy.

This issue is not completely novel. In an Eighth Circuit case, the court reversed summary judgment, finding in favor of the firefighters who had a response time of 30 minutes. *Cross v. Arkansas Forestry Commission*, 938 F. 2d 912, 917 (8th Cir. 1991). That case was similar to this one where the response time as contained in the official

**Memorandum Decision and Order -10**

policy differed from the practiced response time.  *Id.*  That court took into consideration the actual response time, finding 30 minutes was restricting, especially for emergency workers who must "be physically and mentally capable" of performing when they are called.  *Id.* at 918.

Turning now to the question of what constitutes a restrictive response time, opinions vary widely.  In a Tenth Circuit case, plaintiffs were van drivers who transported railroad crews.  *Norton v. Worthen Van Serv., Inc.,* 839 F.2d 653, 654 (10th Cir.1988).  Those plaintiffs were required to be "near enough to the employer's premises to be able to respond to calls within fifteen to twenty minutes" and were disciplined if they failed to promptly respond.  *Id.*  In a two-page opinion, that court found the time was not compensable.  *Id.*  However, that court reached its conclusions almost entirely based on the firemen not being required to remain on the employer's premises.  *Id.* at 655.  Thus, it is not clear whether the court weighed the response time, or took any other factors into consideration when drawing its conclusions.  *Id.*

In subsequent Tenth Circuit decisions the courts took more factors into consideration and came to opposite conclusions.  *See Renfro v. City of Emporia, Kan.*, 948 F.2d 1529 (10th Cir. 1991).  The firefighters in that case were also required to respond within 20 minutes and their time was compensable.  *Id.* at 1536.  The Tenth Circuit took all the *Owen* factors into consideration again in *Pabst.  Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128 (10th Cir. 2000). That case involved utility company techs who monitored alarms via laptop computers and were required to respond via laptop within15 minutes.  *Id.* at 1134-35.  The court found the facts more analogous to *Renfro*, determining the on-call time was compensable.

**Memorandum Decision and Order -11**

In a Ninth Circuit case, the court found some mechanic's overtime was non-compensable where they were not required to respond in a fixed time limit. *Owens*, 971 F.2d 347, 350 (9th Cir. 1992).  Additionally, those workers were not required to affirmatively monitor radio dispatches.  *Id.*  Instead, they were called or paged at home, and if they were not available, they received respite.  *Id.*  The Ninth Circuit denied overtime pay again in *Berry*, 30 F.3d 1174 (9th Cir. 1994).  In that case, Coroners were to respond as soon as possible by phone, usually within 15 minutes.  *Id.* at 1178.  However, they were not required to get to the scene in that amount of time, and often were not required to physically arrive at all.  *Id.*  Often, the coroners could conduct an investigation by phone or wait until the next day.  *Id.*  In light of these facts, the court denied compensation, finding no specific response time in which they were obligated to arrive in person.  *Id.* at 1184.

The question of which time limit to use, the 5 minute response time or the "official" policy of a 20 minute response time, is disputed in this case.  If the employees were never actually told they could respond within 20 minutes, then the five minute response time should be used by the Court.  If on the other hand, the supervisor was advised the unwritten county policy was a 20 minute response time on or about 1998-2000 and such policy was shared with the other workers, but such workers elected to respond within five minutes based on their moral or ethical beliefs that they should respond quickly to medical emergencies, then the county's policy response time of 20 minutes could be considered by the Court in evaluating the response time factor.  The deposition and affidavit testimony in this case is not clear on whether the 20 minute policy was in fact understood to be the policy by the County Commissioners, that such

**Memorandum Decision and Order -12**

policy was made known to the employees, or if the employees were made aware of the 20 minute policy used by Treasure Valley paramedics.  There has been no evidence or argument asserted to infer any of the workers adhered to the 20 minute time limit.

If this Court, like the Eighth Circuit, uses the actual time limit adhered to by the employees when making its analysis, this Court finds the response time would weigh in favor of the Plaintiffs as being unduly restrictive.  Such a short response time is more burdensome than any other case this Court has reviewed.  Unlike the workers who did not have a specific response time or who were not required to respond in person, Plaintiffs were engaged in emergency medical work, requiring them to leave immediately and arrive clean, sober and in person.  Because this response time would sufficiently restrict Plaintiffs from using their time for personal pursuits, this factor weighs heavily in favor of them being "engaged to wait" while on subject-to-call status if the 5 minute response time is applicable.

**d)      Ability to Trade Shifts**

The fifth factor asks whether the on-call worker may easily trade responsibilities. The Ninth Circuit has described this factor as "less important than its peers," where it describes a plaintiff's ability to avoid shifts, rather than describe restrictions imposed on them during those shifts.  *Brigham*, 357 F3d at 938.  Still, Plaintiffs note there were relatively few employees with whom shifts could be traded and conclude trading shifts was difficult.  In support of this conclusion, however, Plaintiffs provide this Court with no evidence or specific incidences where a worker was unable to trade a shift. Defendants properly note this lack of evidence and argue the contrary, that there was no significant burden on the workers ability to trade shifts.  In support of Defendant's

**Memorandum Decision and Order -13**

conclusion, they point to specific incidences in depositions and affidavits where Plaintiffs and other workers have traded shifts.

In *Berry*, the court was faced with the same scenario, "no policy against trading shifts and no evidence to support a conclusion that trading shifts is difficult." *Berry*, 30 F.3d at 1185. Because the lack of trading shifts did not mean trading would be difficult, that court found this factor weighed in favor of the employer. *Id.* Similarly here, Plaintiffs have not shown any restrictions in the ability to trade shifts. Thus, this factor is weighed in favor of Defendants.

**e)      On-Call Activities**

Finally, to determine whether workers are free to engage in personal activities, courts will inquire whether the employee had actually engaged in personal activities during call-in time. This inquiry does not seek information about what activities individuals are prevented from participating in. Rather, it asks which activities are actually engaged in during the on-call shifts. *See Berry*, 30 F.3d at 1185 (9th Cir. 1994).

In *Owens*, workers attended multiple out-of-town events, participated in bowling, golf, attended church, went fishing, hunting, and a variety of other activities. *Id.* 971 F.2d at 353 (9th Cir. 1992). Based on the wide variety of activities, that court found the workers were not overly restricted in their actions so as to warrant compensation.

Similarly, in *Norton* that the workers' on-call time was not so restrictive as to amount to working time. *Id.* 839 F.2d at 655. That court emphasized that, despite some limitations in activities, the drivers were free to leave the employer's premises and had the "opportunity to pursue personal business between assignments." *Id.*

**Memorandum Decision and Order -14**

In a different Ninth Circuit case, *Berry*, plaintiff-coroners complained they were unable to engage in any out of town activities, hunting, or fishing; unlike the workers in *Owens*. *Id.* at 1178. Still, the court stressed the ability of the coroners to maintain secondary employment while on-call, and found this fact undermined the coroners' position that they are unable to actually pursue personal activities. *Id.* at 1185-86. Thus, the ability to maintain secondary employment while on-call has been a similar thread in the non-compensable cases of the Ninth Circuit.

In contrast, the workers in *Cross* could not attend events or participate in activities that would prevent them from monitoring radio transmissions. *Id.* 938 F.2d 912, 916-17 (8th Cir. 1991). Those workers were unable to entertain guests in the home, attend church or other social gatherings with which radio transmissions would interfere; Nor was it prudent for them to attend costly events in case they were required to leave early and forfeit their money. *Id.*[2] That court reversed summary judgment in favor of the employees. *Id.* at 918. In *Renfro*, the Tenth Circuit held on-call time compensable even though employees, among a host of other activities, participated in business meetings. *Id.* at 948 F.2d at 1532.

In *Brigham*, the Ninth Circuit noted workers "were able to use portions of their duty shifts to: sleep, eat, read, study, exercise, watch television, help their children with homework, play games, maintain their homes and yards, work on their motorcycles, and entertain guests." *Id.* 357 F3d 931, 937. Despite the similarities in *Owens* and *Berry*, the court found the balance to weigh narrowly in favor of the employees. *Id.* Although such

---

[2]   Although that case focused on what the workers were unable to participate in, the case still provides relevant facts for analogy.

**Memorandum Decision and Order -15**

a conclusion might seem like a discrepancy, the workers in that case were virtually tied to their homes, a considerable geographic restriction.  *Id.*

In Plaintiffs' briefing, they focus largely on the activities which they were unable to participate in.  Although compelling, the Court must take into consideration the converse, activities participated in.  Plaintiffs, noting the ability to engage in the same activities while on-duty, admit to the following: participating in sports, mechanics, washing cars, secondary employment, shopping, running various errands, dining out, visiting family, sporting events, construction, and more.  Defendants add, and Plaintiffs have not disputed, that some Plaintiffs admit to earning substantial amounts of secondary income while on-call.

As shown above, courts (even some within the same circuits) have come to many different conclusions, some difficult to reconcile.  Nonetheless, cases cited from the Ninth Circuit are reconcilable and weigh in favor of finding that Plaintiffs were not overly restricted in their activities.  Although Plaintiffs were unable to engage in out of town activities unlike the workers in *Owen*, they shared a host of other activities in common.  Another major factor weighing in favor of the Defendants is that, like the coroners in *Berry*, Plaintiffs engaged in secondary employment while on-call.  Finally, unlike the workers in *Brigham*, Plaintiffs were able to leave the immediate premises of their homes to engage in multiple activities within the Weiser city limits.  Thus, although Plaintiffs legitimately show they were somewhat limited in their activities, such limitations do not tilt this factor in their favor.

**Memorandum Decision and Order -16**

**f)**       **Frequency of Calls and Possible Use of Pager**

The third factor asks whether the frequency of calls was unduly restrictive.  Under this factor courts have inquired into 1) the nature of radio traffic as well as 2) the frequency of actual call-ins.  The "nature of radio traffic" involves the restrictions imposed by the noise disturbances common in monitoring a radio.  This query has also been analyzed under the "use of a pager" factor.  The "frequency of call-ins" question looks at the average number of call-ins and their restrictive effect on a worker.  Both arguments will be dealt with here.

Monitoring radio traffic is considered an undue burden where workers are prevented from participating in many activities as a result of a noisy radio.  *See Cross*, 938 F.2d 912, 916-17 (8th Cir. 1991).  In *Cross*, the workers were unable to attend sporting, musical, or other social events because they would be unable to listen to both the radio and the event.  *Id.*  Other courts have contrasted a page-and-call-in system with that of constant radio monitoring.  *Aiken, et al v. City of Memphis,* 190 F.3d 753 (6th Cir. 1999).  In comparing their "pager system" to other systems, the *Aiken* court noted the greater intrusion radio monitoring can have on employee's personal time.  *Id.* at 761.  In *Pabst*, the court found sleep disruption was a determining factor in whether on-call time was compensable.  *Id.*  228 F.3d 1128 (10th Cir. 2000).

Plaintiffs also claim the frequency of call-ins was an undue burden.  Courts have been less consistent in defining when the frequency of calls becomes an undue burden.  In the Ninth Circuit alone, courts have come to different conclusions.  In *Berry*, the court found 3-4 calls in a 24-hour shift restrictive.  *Berry*, 30 F. 3d 1174, 1186.  However, in *Brigham*, calls were lower, 1-2 times on average.  *Id.* 357 F.3d 931, 936-37.  Still, the

**Memorandum Decision and Order -17**

court found this to be restrictive because each call was an emergency involving the safety of people, requiring the workers to be absolutely prepared.  *Id.*  The coroners in *Berry*, on the other hand, were attending to post-mortem patients.  *Berry*, at 1186.

Parties in this case disagree somewhat as to the frequency of calls.  Defendants, in their brief, provide a two-month summary of the call amounts.  Stressing the infrequency of the calls, Defendants show a range of 1-3 calls per shift.  Plaintiffs, on the other hand, claim there was a clear average of 2 calls per shift.

As for the radio traffic, Plaintiffs claim the radios are extremely active, carrying channels from multiple Southeast Idaho sources: Midvale, Cambridge, St. Alphonsus, St. Luke's and Ontario Oregon.  Plaintiffs further allege this radio traffic restricts them from attending many social events and causes sleep disturbances.  Defendants, although not directly disputing these claims, argue radios would not interfere with social events, especially where there was the option of an earpiece and that the radio is a single-band radio.

In making findings in the light more favorable to the non-moving party, the Court must assume the Defendant's account of the facts are true.  On the issue of radio activity, Defendants have not created a disputed issue.  The facts, as set forth in the briefing, show that there was a high volume of radio activity, enough to be burdensome.  However, the facts relating to the number of call-ins are disputed.   Both parties have supported their positions by pointing to evidence in the record and affidavits.  Although they are not far off in their conclusions, even the slightest difference may be determinative in a case such as this.  Consequently, the Court cannot perform an adequate analysis of this factor while these questions of fact are yet to be determined.

**Memorandum Decision and Order -18**

g)      **Conclusion of First Prong Analysis**

The geographical restrictions and actual response time adhered to by the workers

weigh in favor of the Plaintiffs in this case.  The impact of these two important factors

could be enough to outweigh those found in favor of the Defendants: "on-premise

living," "ability to trade" and "personal activity."  Thus, the first prong, the overall

limitations on personal activity, tilts narrowly in favor the Plaintiffs.  However, this

Court is unable to complete a full analysis of the factors where a disputed issues of fact

remains as to: 1) the official response time and whether employees were advised/trained

concerning the 20 minute response time; and 2)  the frequency of calls.  Thus, the first

prong of the analysis does not lead the Court to any conclusion on this matter.

II.     **Agreement Between the Parties**

The second prong of the analysis requires a court look at the agreement between

the parties.  "[A]greements between the parties are one of the predominant factors to be

considered in determining whether the employees' on-call waiting time is compensable."

*Berry*, 30 F.3d 1174, 1180 (9th Cir. 1994).  Under this analysis, a court must first

determine if there was an agreement between the parties and then determine how the

agreement affects the meaning of "work" under the FLSA.  *See Id.* at 1181-82, and

*Brigham*, at 938-39.

Plaintiffs offer little, if any, argument against Defendant's assertion that there was

an agreement.  In addition, case law clearly recognizes that an agreement may arise by

conduct.  *See Berry* at 1181-82, and *Brigham*, at 938-39.  In *Owens,* for instance, the

court explained that "the Plaintiff mechanics . . . may not have liked the company's

formal call-in system, but by continuing to work, they constructively accepted the new

**Memorandum Decision and Order -19**

terms." *Id.* at 355.  In this case, the record demonstrates the workers were aware of the compensation arrangement and continued to work despite any dissatisfaction they may have had with the on-call requirements.  Although Plaintiffs complain that such an agreement takes unfair advantage of workers, dissatisfaction alone has not overcome the existence of these types of agreements.

The mere existence of an agreement does not end the court's inquiry.  Next, the court must "determine whether the parties characterized the time spent waiting on-call as actual work."  *Berry*, at 1181.  In *Berry*, the Ninth Circuit stated

> An agreement between the parties which provides at least some type of compensation for on-call waiting time may suggest the parties characterize waiting time as work. Conversely, an agreement pursuant to which the employees are to be paid only for time spent actually working, and not merely waiting to work, may suggest the parties do not characterize waiting time as work.

*Id.* At 1181, *See also Brigham*, at 939-40.  Thus, "[t]he agreement offers a sound methodology for calculating how many hours the employees actually worked within the meaning of FLSA."  *Brigham* at 942.

In this case, Plaintiffs were each paid different hourly amounts for their on-call time, ranging from 1/8 to 1/19 of their on-duty pay.[3]  In addition, workers were paid their regular rate for time spent responding to a call.  Thus, the agreement between the parties did provide for some compensation, albeit minimal, and may possibly be construed as indicating the Plaintiffs were engaged in some type of work.  However, the fact that there was some compensation provided for in the agreement is not dispositive.  The court must

---

[3]Pursuant to Defendants Undisputed Statement of Facts, volunteers were paid a fee of $5 for each twelve hour shift a volunteer agrees to be on call and when called in, the volunteer was paid a fee of $5.15 an hour for the amount the volunteer actually spends responding to a call.  Patterson and VonBrethorst, as full-timers, were paid $2 an hour when they were on call and their hourly rate when actually responding to a call.

**Memorandum Decision and Order -20**

accept the agreement.  An "agreement should be accepted only if it is reasonable in light of the pertinent facts." *Brigham* at 941 (internal citations omitted).  Whether or not an agreement is reasonable requires the court to reflect back on all the factors restricting personal activities.  *Id.*  If the compensation seems reasonable in light of those restrictions, then the court must uphold the agreement.  *Id.* at 941-42.

In *Brigham*, the workers and employer had an agreement whereby on-callers received 10 hours reimbursement for 6 hours of actual work and 18 hours of on-call time. *Id.* at 940.  In addition, workers would receive time-and-a-half pay for any other emergency work during the 24 hour on-call period.  *Id.*  The court found the parties had constructively agreed that the remaining on-call time was equivalent to about 4 hours actual work on a maintenance shift.  *Id.*  The court then used the 4 hour, adjusted, time to calculate how many hours employees actually worked within the meaning of the agreement and FLSA.  *Id..* at 942.  "If that calculation exceeds 40 hours worked in a given week, the additional hours must be paid at time-and-a-half rate."  *Id.*

In order for this Court to accept the agreement, it must be able to reflect back on the factors restricting personal activities.  Unfortunately, that analysis remains partially incomplete.  Thus, because some disputed issues of fact remain, summary judgment must be denied.

**Memorandum Decision and Order -21**

## ORDER

In accordance with the Memorandum and Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the Motion for Summary

Judgment (Docket No. 14) shall be DENIED.

DATED:  **March 31, 2008**

Honorable Edward J. Lodge
U. S. District Judge

**Memorandum Decision and Order -22**